### In re BROWN IRON & METAL, INC., Debtor.

### Glen C. SHULTS, Jr., Trustee, Plaintiff,

### v.

### UNIVERSITY OF OKLAHOMA FOUNDATION; Homer I. Jerrolds and wife, Linda R. Jerrolds; J.R.C., Inc.; H. Scott Reams, Defendants.

Bankruptcy No. 3–82–01356.
Adv. No. 3–82–0958.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 24, 1983.

Campbell, Hooper & Shults, Glen C. Shults, Jr., Newport, Tenn., pro se.

Kelley Hinsley, Morristown, Tenn., for defendants Homer I. Jerrolds, Linda R. Jerrolds, and J.R.C., Inc.

Baker, Logsdon & Phelps, Thomas E. Baker, Kingfisher, Okl., for defendant University of Oklahoma Foundation.

Taylor, Tilson, Inman & Reams, David M. Tilson, Morristown, Tenn., for defendant H. Scott Reams.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The trustee in bankruptcy seeks to avoid a transfer of real property by the debtor to the Jerrolds on the basis the transfer was preferential. 11 U.S.C.A. § 547(b) (1979). A warranty deed effecting the transfer was executed more than ninety days before the date of the filing of the debtor's petition in bankruptcy but was filed for registration within the ninety-day period. Citing 11 U.S.C.A. § 547(e) (1979) and Tenn.Code Ann. § 66–5–106 (1982) for the purpose of determining when the transfer was made, the trustee contends the deed was not effective until it was filed for registration. Averring the transfer as between the debtor and themselves was effective upon delivery of the deed, the Jerrolds deny that the trustee is entitled to avoid the transfer. It is their contention they were not creditors of the debtor. However, in the event the transfer is avoidable, the Jerrolds request the court to recognize a lien against the property to the extent they advanced funds to the debtor for the purpose of acquiring the property.

I

The voluntary chapter 7 bankruptcy petition of Brown Iron & Metal, Inc. was filed on September 10, 1982. During 1979, approximately three years previous to filing its bankruptcy petition, the debtor and J.R.C., Inc., a Tennessee corporation in the business of railroad maintenance and construction, entered into an oral agreement for the construction of a spur line. The consideration for the construction, commenced during 1979 and completed on or about February 1, 1980, was to be $20,000.00. (Testimony of Homer I. Jerrolds at 17.) With the exception of one culvert, all of the materials for the construction were furnished by J.R.C., Inc. No payment was

received from the debtor by J.R.C., Inc. upon its completion of construction of the spur line. In fact, no payment whatsoever has ever been credited against the debtor's obligation to J.R.C., Inc.

At the time of the completion of the spur line, the debtor had an option to purchase the 2.71-acre tract at issue for $30,000.00. Defendant Homer I. Jerrolds (Jerrolds), a principal of J.R.C., Inc., was interested in acquiring this property. The debtor and Jerrolds, representing J.R.C., Inc., orally agreed the debtor's obligation to J.R.C., Inc. would be extinguished in exchange for the transfer of the tract to Jerrolds, provided that Jerrolds would furnish a $10,000.00 downpayment to enable the debtor to purchase the property.[1] Pursuant to this agreement, Jerrolds issued *his* check in the amount of $10,000.00 payable to the order of the debtor Brown Iron & Metal, Inc. (Collective Exhibit 3.) Debtor exercised its option to purchase and obtained a warranty deed to the property from Frank S. Cleckler. The warranty deed, dated March 5, 1980, was recorded on April 8, 1980, in the Register's Office for Hamblen County.

The $10,000.00 downpayment furnished by Jerrolds was paid to Cleckler. A note and first deed of trust were executed by the debtor to secure payment of the $20,000.00 balance of the purchase price. This balance was to be paid beginning on March 5, 1981, in five annual installments of $4,000.00 principal plus 10% interest.

Cleckler, the mortgagee-seller, died testate during either 1980 or 1981. He devised his interst in the debtor's note and first deed of trust to the defendant University of Oklahoma Foundation (Foundation). Defendant H. Scott Reams is the trustee for the benefit of the Foundation of the first deed of trust.

The debtor paid the first installment payment but was unable to pay the 1982 installment. When Jerrolds realized it would

be necessary for him to make this second installment payment, he obtained a warranty deed to the property from the debtor in favor of himself and his wife, defendant Linda R. Jerrolds. Although this deed is dated May 25, 1982, it was not recorded until August 17, 1982, less than thirty days previous to the filing of the debtor's petition. Jerrolds testified he had no explanation for his delay in recording the deed from the debtor. A check dated August 5, 1982, in the amount of $5,600.00 (Collective Exhibit 3) was used to pay the 1982 installment payment. This check was drawn against the account of J.R.C. Company, a/k/a J.R.C., Inc., and signed by Homer I. Jerrolds.

Jerrolds knew the debtor had an option to purchase the property from Cleckler. For no explained reason other than the fact that Cleckler was aged and feeble, Jerrolds feared that directly approaching Cleckler himself to purchase the property might result in a refusal by Cleckler to even sell the property to the debtor. Therefore, Jerrolds chose not to deal directly with Cleckler. Also, Jerrolds testified he could save some money by not having to pay taxes against the property in question (since the record title to the property would be in the debtor's name).

Jerrolds' wife paid the 1980 and 1981 taxes in the total sum of $285.80 against the property. Some buildings on the property were torn down by Jerrolds, but their removal did not improve the value of the property for the benefit of the debtor.

The unpaid balance secured by the Foundation's first deed of trust is approximately $13,000.00. The fair market value of the property at issue is $27,100.00, according to a recent appraisal.

The trustee in bankruptcy asserts the transfer of the property from the debtor to Jerrolds and his wife is clearly preferential. This assertion is disputed by the Jerrolds;

---

1. It is not apparent from the record whether J.R.C., Inc. is wholly-owned by Homer I. Jer-     rolds. There is no corporate resolution in the

they insist the transfer was not preferential because they were not creditors of the debtor at the time of the transfer. The debtor's schedules reflect J.R.C., Inc. is an unsecured creditor of the debtor with a $19,000.00 claim.[2] The debtor did not list either of the Jerrolds as creditors.

## II

■ The elements of an avoidable preference are outlined in Bankruptcy Code § 547(b). Absent any exception provided by § 547(c), which is immaterial herein,

[T]he trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent; [3]

(4) made—

(A) on or within 90 days before the date of the filing of the petition

. . . .

(5) that enables such creditor to receive more than such creditor would receive if—

. . . .

(B) the transfer had not been made

. . . .

11 U.S.C.A. § 547(b) (1979).

Despite the fact Jerrolds furnished $10,-000.00 down payment money enabling the debtor to acquire the property at issue in 1980, the Jerrolds contend they were not

creditors of the debtor when the debtor deeded the 2.71-acre tract to them. This anomalous position is presumably asserted in an attempt to defeat the trustee's effort to avoid the controverted conveyance under his § 547 avoidance power. However, absent a debtor-creditor relationship between the debtor and the Jerrolds, the transfer is avoidable by the trustee under 11 U.S.C.A. § 548 (1979):

(a) The trustee may avoid any transfer of an interest of the debtor in property . . . that was made . . . on or within one year before the date of the filing of the petition, if the debtor—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer . . . and

(B)(i) was insolvent on the date that such transfer was made . . . .

The deed from the debtor was both executed and filed for registration within less than one year before the date of the filing of the debtor's petition. The only value, if any, received by the debtor in connection with the transfer was the assumption by the Jerrolds of the unpaid balance on the debtor's note to Cleckler secured by the first deed of trust.[4] The court assumes *arguendo* this assumption constituted value.[5] The amount of this unpaid balance was $16,000.00, according to the provisions of the May 25, 1982, deed from the debtor to the Jerrolds. Since there is no evidence of any increase in the fair market value of the property between May 25, 1982, and December 9, 1982, when the appraisal value

record authorizing this agreement between the debtor and Jerrolds.

**2.** There is a conflict in the record concerning the amount of the debtor's obligation to J.R.C., Inc. for construction of the spur line. Jerrolds testified the amount owed was $20,000.00 and that no credit had been received against the claim. This conflict is irrelevant insofar as the questions presently at issue.

**3.** For the purposes of Bankruptcy Code § 547, a debtor is presumptively insolvent on and during the 90 days immediately preceding the date

of his petition in bankruptcy. 11 U.S.C.A. § 547(f) (1979).

**4.** The indebtedness of the debtor to J.R.C., Inc. was not reduced in any amount whatsoever as a consequence of the transfer at issue.

**5.** "Value" is defined in 11 U.S.C.A. § 548(d)(2)(A) (1979). It is unnecessary for the court to determine whether the assumption of the debtor's obligation qualified as giving "value" in this case.

of the property was reportedly $27,100.00, the debtor clearly received less than a reasonably equivalent value in exchange for the property. Furthermore, since a bona fide purchaser without notice from the debtor could have acquired an interest superior to any interest of Jerrolds prior to the filing of his deed for registration, the transfer in question was not "made" until the deed was filed for registration on August 17, 1982. 11 U.S.C.A. § 548(d)(1) (1979);[6] Tenn.Code Ann. § 66–5–106 (1982).[7] Thus, the transfer from the debtor to the Jerrolds was made only twenty-four days prior to the filing of debtor's bankruptcy petition. This transfer was made in furtherance of the agreement that the debtor's obligation to J.R.C., Inc. would be satisfied by transfer of the property. (Testimony of Homer I. Jerrolds at 19.) Since the debtor's bankruptcy schedules reflect assets of $136,-354.81 and liabilities of $302,641.29, the court has no difficulty in finding the debtor was insolvent when the transfer was made on August 17, 1982.

## III

Because the trustee may avoid the deed of the debtor to the Jerrolds pursuant to § 548(a),[8] the court must determine whether the Jerrolds are entitled to a lien against the property for any improvement. Section 550(d) of the Bankruptcy Code enacts in pertinent part:

(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and

(B) any increase in value as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property;

(E) discharge of any lien against such property that is superior or equal to the rights of the trustee; and

(F) preservation of such property.

Clearly, the $10,000.00 down payment furnished by Jerrolds in 1980 does not qualify as an "improvement" under § 550(d), since the $10,000.00 advance was made prior to any transfer to Jerrolds of an interest in the property in question. At most, the $10,000.00 down payment entitles Jerrolds to an unsecured claim for that amount against the debtor.

6. "For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee ...."

7. "No deed of conveyance for lands ... shall be good and available in law, as to strangers, unless the same be acknowledged by the vendor ... and registered by the register of the county where the land lies ...."

8. Assuming arguendo that a debtor-creditor relationship existed between the debtor and the Jerrolds, the court is convinced the Jerrolds' deed could be avoided as a preferential transfer. The transfer would have been on account of an antecedent debt created when Jerrolds advanced the $10,000.00 down payment money on February 26, 1980. The transfer from the debtor to the Jerrolds was not "made" until August 17, 1982, when the deed was filed for registration. 11 U.S.C.A. § 547(e)(1)(A) (1979); Tenn.Code Ann. § 66–5–106 (1982). The transfer, therefore, occurred within the ninety-day period preceding the filing in bankruptcy at a time when the debtor was presumptively insolvent. See 11 U.S.C.A. § 547(f) (1979). Finally, the attorney for the Jerrolds admitted during the trial that the transfer would enable his client to receive more than they would have received had the transfer not been made and had they received only the amount they would otherwise be entitled to receive under the provisions of the Bankruptcy Code.

The August 5, 1982, installment payment of $5,600.00 to the Foundation, the first mortgagee, is an improvement within § 550(d)(2)(D). This payment reduced the secured debt against the 2.71-acre tract and correspondingly increased the debtor's equity in the property. However, the $5,600.00 payment was made by J.R.C. Company a/k/a J.R.C., Inc., which is admittedly not a transferee of the property. Nevertheless, J.R.C., Inc. appears to have been an alter ego of the transferee Jerrolds in this case, and the debtor's estate would be unjustly enriched if the court denied J.R.C., Inc. a lien against the property in the amount of $5,600.00. See 4 Collier on Bankruptcy ¶ 550.04 n. 2 (15th ed. 1979). Although property taxes paid are improvements under § 550(d)(2)(C), the Jerrolds are not entitled to any lien for their payment of property taxes because their payments preceded the transfer of the property to them.

The result in this case may appear somewhat harsh. However, creditors of the debtor did not have record notice of any interest of the Jerrolds in the property at issue and may have relied upon a belief the debtor had equity in the property. Further, neither Jerrolds nor J.R.C., Inc. even occupied or used the property, thereby alerting others to inquire as to their possible interest in the property. Furthermore, Jerrolds could have avoided this controversy in the first instance by obtaining a deed from the debtor and recording it in 1980.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.