In re Bill J. EADS and Patsy M. Eads, Debtors.

In re William R. PROBASCO and Joan Probasco, Debtors.

In re Eddie McKINNEY and Thelma Jo McKinney, Debtors.

Bill J. EADS and Patsy M. Eads, Debtors-In-Possession, Plaintiffs,

v.

William R. PROBASCO, et al., Defendants.

Robert C. ARNOLD, as Disbursing Agent, Cross-Claimant,

v.

Bill J. EADS and Patsy M. Eads, Counter-Defendants.

Bankruptcy Nos. 182–01665, 182–01963 and 180–01228.
BAP Nos. EC–86–1245 EVAS, EC–86–1243 EVAS and EC–86–1244.
Adv. Nos. 184–0134 to 184–0136.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Sept. 25, 1986.

Decided Dec. 16, 1986.

Michael A. Milnes, Michael A. Milnes Law Corp., Fresno, Cal., for appellants.

David Ray Jenkins, Fullerton, Land, Richert & Patch, P.C., Fresno, Cal., for appellees.

## OPINION

Before ELLIOTT, VOLINN and ASHLAND, Bankruptcy Judges.

ELLIOTT, Bankruptcy Judge:

This appeal is taken from a judgment determining the ownership and lien interests in three parcels of land and authorizing the sale of that land free and clear with certain liens to attach to the proceeds. Appellants are Mr. and Mrs. Probasco, Mid Valley Time Loan, Robert Arnold, the disbursing agent under the confirmed plan in the Probasco's Chapter 11 case, and the partnership of Eads & Probasco, (hereafter "the Probascos"). They contest the court's decision that Mr. and Mrs. Eads own all of parcel one, and the court's power to authorize the sale of the Jamison agreement, which concerned sewage disposal rights on adjacent property, along with the subject property. We affirm.

## JURISDICTION

The appeal is timely. The judgment was entered in the docket on March 10, 1986. [ER 102]. The Probascos filed their notice of appeal on March 20, 1986. [ER 108].

The complaint to sell the property and determine lien and ownership interest therein as well as the counterclaims under 11 U.S.C. §§ 547, 548 appear to be core actions. *See* 28 U.S.C. § 157(b)(2)(F), (H), (K), (N).

## BACKGROUND

This appeal involves a tract of land known as "Quail Meadows." Quail Meadows consists of approximately 76.61 acres of land which is divided into three parcels. [ER 84]. Parcel one comprises approximately 75% of the tract and parcels two and three comprise the remaining 25% of the land. [ER 84].

In April 1984, the Eads filed an "amended complaint to determine nature, extent, and validity of liens and interests in real property, for order to sell property free and clear of liens and interests, for modification of stay and for other relief." Among other things, the complaint alleged that the Eads owned all of parcel one and that any interest that the Probascos might claim in parcel one was voidable under 11 U.S.C. § 544(a)(3). [ER 2, 7]. In their answer and a counterclaim, the Probascos claimed ownership of a 50% undivided interest in parcel one either directly or by way of a 50% interest in a partnership with the Eads concerning Quail Meadows. The counterclaim also alleged that to the extent that the Eads' use of 11 U.S.C. § 544(a)(3) operated as a transfer of their interest in parcel one, it was a voidable transfer under 11 U.S.C. §§ 547(b), 548(a)(2). In addition, the counterclaim sought the imposition of a constructive trust on 50% of parcel one.

The following events preceded the filing of the Eads complaint. In 1978 Bill and Patsy Eads acquired record title to Quail Meadows. Three years later, in 1981, Bill Eads approached Bill Probasco, a partner of Eads in another enterprise, to discuss Probasco's participation in the refinancing of Quail Meadows and partnership in the development of Quail Meadows. Eads and Probasco agreed that 1) they would become partners, 2) they would consumate a potential loan from Old National Financial Services, 3) the Eads would transfer a 50% interest in Quail Meadows to the Probascos, 4) Probasco would make payments as they become due on the Old National loan and assist in funding the development of Quail Meadows, and 5) they would develop Quail Meadows as a mobile home park.

The Old National loan and the transfer of 50% in Quail Meadows to the Probascos was accomplished through an escrow which closed on August 3, 1981. The escrow agent, apparently by inadvertence and without the knowledge of the parties, omitted the legal description of parcel one from the legal descriptions attached to the deed to the Probascos and the trust deed to Old National. The omission was not discovered

until after the Eads and Probascos had filed their bankruptcy cases.

Subsequently, Probasco, through an affiliated entity, Mid Valley Time Loan, made some payments on the Old National loan and funded various costs of development of Quail Meadows including the costs related to obtaining a subdivision map for the tract. The map, which was approved and recorded, listed Eads and Probasco as owners of Quail Meadows. In connection with the development, Eads and Probasco also entered an agreement with John Jamison to use some of Jamison's property for sewage disposal purposes. The Old National loan proceeds were used, as intended by the parties, primarily to satisfy various obligations of Eads. Certain funds expended by Mid Valley Time Loan for the development of Quail Meadows were charged 50% to Probasco and 50% to Eads. A federal partnership income tax return for 1981 was filed by Eads and Probasco with reference to Quail Meadows.

The development of Quail Meadows ceased when the Eads and Probascos filed Chapter 11 cases in July and August 1982 respectively. At that point, the property had been extensively staked by surveyors helping prepare the subdivision map. Additionally, a fence encircled the property and there were three wells on the property.

The Jamison agreement was an integral part of the development and use of Quail Meadows and it had no value other than as a part of the Quail Meadows development. Partition of parcels two and three and the Jamison agreement from parcel one would be impractical and would yield a substantially smaller price than the sale of the whole development. Any detriment to the Probascos from the sale was outweighed by the benefits of the sale to the Eads estate.

On these facts, the judge held, among other things, that the Eads obtained the status of a bona fide purchaser upon the commencement of their case under 11 U.S.C. § 544(a)(3) and that they were the owners of parcel one free and clear of any interest of the Probascos, Robert Arnold,

or the partnership of Eads and Probasco in parcel one. He also held that neither the condition of Quail Meadows at the commencement of the Eads case or the filing of the subdivision map were inconsistent with the record title so as to raise a duty of inquiry in a prospective purchaser, and that the Eads and the Probascos were half owners of the Jamison agreement. The judge then authorized the sale of the agreement free and clear of the Probascos' interest therein pursuant to 11 U.S.C. § 363(h). A judgment was entered authorizing the sale of Quail Meadows consistent with the above conclusions.

## ISSUES

On appeal, the Probascos essentially contend that the bankruptcy judge erred in 1) using § 544(a)(3) to avoid their interest in parcel one, 2) failing to impose a constructive trust for their benefit on parcel one, and 3) authorizing the sale of the Jamison contract.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. *Crocker National Bank v. American Mariner Industries (In re American Mariner Industries)*, 734 F.2d 426, 429 (9th Cir.1984).

## DISCUSSION

Section 544(a)(3) provided, at the time the Eads case was filed in 1982, that

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a

bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Under 11 U.S.C. § 1107(a), a debtor in possession has all the rights and powers of a trustee with certain exceptions that are not applicable here. "Debtor in possession" may be interchanged freely with "trustee" for purposes of the following discussion.

While federal law grants and defines the role of the trustee as a hypothetical bona fide purchaser, *Saghi v. Walsh (In re Gurs)*, 27 B.R. 163, 165 (9th Cir. BAP 1983), the rights of the hypothetical bona fide purchaser vis a vis the entity whose interest the trustee seeks to avoid are determined by state law. *Id; Washburn & Roberts, Inc. v. Park East*, 795 F.2d 870, 872 (9th Cir.1986). The § 544(a)(3) hypothetical bona fide purchaser was defined in *Saghi* as a person who:

(1) at the instant the petition is filed, purchases from the debtor;

(2) for value;

(3) in good faith;

(4) without actual knowledge of any defect or limitation in title;

(5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;

(6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and

(7) who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

*Saghi*, 27 B.R. at 165.

■ The Probascos first assert that under California law Quail Meadows was partnership property and that the partnership interests of Bill Eads and Bill Probasco are personal property. Because § 544(a)(3) provides the trustee with strong

arm powers in regard to real property, they argue that it cannot be used to avoid Probasco's personal property interest [AB 14].

Assuming that the Eads did contribute Quail Meadows to the partnership and that it became partnership property without a formal conveyance to the partnership, *see* Cal.Corp.Code § 15008(1), the partnership interest in Quail Meadows was still voidable by a bona fide purchaser of parcel one from the Eads because the Eads were the record owners of that parcel at the commencement of their case.

Where title to real property is in the name of one or more of the partners, whether or not the record discloses the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property ... unless the property has been conveyed to a bona fide purchaser for value without knowledge that the partner in executing the conveyance has exceeded his authority.

Cal.Corp.Code § 15010(3); *see also Placer Savings & Loan Association v. Walsh (In re Marino)*, 49 B.R. 600, 602–603 (N.D.Cal. 1985) (holding that a bona fide purchaser in this situation would be "protected" without relying on § 15010(3)). Section 544(a), in cloaking the trustee with bona fide purchaser status, expressly disregards any personal knowledge of the trustee. *Matos v. Gwinnett Bank & Trust (In re Matos)*, 50 B.R. 742 (N.D.Ala.1985). The hypothetical bona fide purchaser, consequently, cannot be said to have known that the partner executing the conveyance exceeded his authority.

However, if, under state law, the facts would provide constructive notice of a prior transfer to a subsequent purchaser so as to defeat the good faith of the subsequent purchaser then the trustee's actions under § 544(a)(3) will fail. *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982); *Placer Savings and Loan Association*, 49 B.R. at 602; *Saghi*, 27 B.R. at 165.

California law provides that a purchase made with constructive notice of another's rights is not in good faith. *See generally,* 3 B. Witkin, *Real Property* §§ 151, 153 (8th ed. 1973). Constructive notice may be provided by facts which would put a reasonable person on inquiry of the other's rights. *Id.*

The Probascos argue that the trial court erred in finding that the evidence was not sufficient to establish constructive notice of Mr. Probasco's interest in Quail Meadows. They contend their Chapter 11 case would put a reasonable person on notice that Quail Meadows was potential subdivision property. That notice, the Probascos argue, raises the duty of further inquiry and that inquiry at the proper Madera County offices would have disclosed the tentative subdivision map showing the owners to be Mr. Probasco and Mr. Eads.

A subdivision map may be recorded, 2 H. Miller & M. Starr, *California Real Estate* § 11:8 (1977), and thereby provide constructive notice of the contents of the map, *Id.* § 11:4. But it is only the earlier recordation of a *conveyance* of real property which voids subsequent sales of the same real property to a good faith buyer. Cal. Civ.Code §§ 1214, 1215, 3 B. Witkin, *Real Property* § 144 (8th ed. Supp.1984); *Brown v. Johnson,* 98 Cal.App.3d 844, 849, 851, 159 Cal.Rptr. 675 (1979). No law is cited for the proposition that a subdivision map may be a conveyance or provide constructive notice of an adverse claim.

Constructive notice may also result from the existence of facts which would put a reasonable person on notice of the adverse claimant's interest. 2 H. Miller & M. Starr, *California Real Estate* § 11.51 (1977). Whether the circumstances are sufficient to put one on inquiry of another's interest in property is a question of fact. *Id.* Although the Probascos refer to a reporter's transcript in their statement of facts, no transcripts have been filed with the Panel. The bankruptcy court clerk's office indicated that the adversary docket did not reveal that a transcript had been ordered and the designation of items to be included in the record did not include the transcript. *See* Bankr.R. 8006. Absent a transcript, it is impossible to determine if the trial judge's conclusion that the facts did not give rise to a duty of inquiry was clearly erroneous. Therefore, we have no choice but to affirm on this point. *McDonough Marine Service, Inc. v. M/V Royal Street,* 608 F.2d 203 (5th Cir.1979); *cf. Southwest Administrators Inc. v. Lopez,* 781 F.2d 1378 (9th Cir.1986) (absence of transcript amounted to failure to prosecute appeal and mandated dismissal of appeal raising mixed questions of law and fact); 9th Cir. BAP R.9(b) (dismissal for failure to prosecute appeal).

The Probascos proceed to argue that Mr. Eads is bound by his actual knowledge of Bill Probascos' partnership interest in Quail Meadows and his admissions to that effect in his schedules. As we mentioned earlier, however, § 544(a) expressly disregards the personal knowledge of the trustee.

Another argument raised by the Probascos is that the bankruptcy judge abused its discretion in failing to grant equitable relief to defeat the Eads claim under § 544(a) to the whole of parcel one. In a recent Ninth Circuit case, Judge Tang was unable to convince the majority that a trustee's use of § 544(a)(3) should be tempered by equitable principles. *Washburn and Roberts, Inc.,* 795 F.2d at 874–875. We, therefore, decline to find that the bankruptcy judge abused his discretion in rejecting the Eads' § 544(a)(3) action on the basis of equitable considerations.

■ The Probascos next argue that the Eads' use of § 544(a)(3) to defeat their interest in parcel one constitutes a voidable preference under 11 U.S.C. §§ 547(b), 548(a)(2). Assuming that the Eads' use of § 544(a)(3) amounted to a transfer of an interest of the Probasco's in parcel one, without the trial transcript and without any specific assignment of error it is impossible

to determine if the bankruptcy court erred in implicitly rejecting these arguments. Therefore, we seem to have no choice but to affirm on these points as well.

■ The Probascos' last argument regarding § 544(a)(3) is that the court abused its discretion in failing to impose a constructive trust on 50% of parcel one. They contend that the evidence justified imposition of a constructive trust and that it may be imposed against a trustee despite the trustee's bona fide purchaser status. On the basis of the court's findings, we might be able to hold that the Probascos were entitled to a constructive trust as a matter of law. *See generally* 7 B. Witkin, *Trusts,* §§ 131, 132 (8th ed. 1974).

Assuming that a constructive trust for the benefit of the Probascos should have been imposed with the Eads as trustees, California law protects a bona fide purchaser of trust property although the sale is in violation of the trust. Cal.Civ.Code § 2243. On the trustee's power to avoid constructive trusts *compare Elin v. Busche (In re Elin),* 20 B.R. 1012 (D.N.J.1982), *aff'd mem.,* 707 F.2d 1400 (3d Cir.1983); *City National Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.),* 41 B.R. 781 (Bankr.S.D.Fla.1984); *Loup v. Great Plains Western Ranch (In re Great Plains Western Ranch),* 38 B.R. 899 (Bankr.C.D.Cal.1984) (allowing trustee to avoid constructive trust interests) *with Vineyard v. McKenzie (In re Quality Holstein Leasing),* 752 F.2d 1009 (5th Cir.1985) (holding that a trustee cannot use his strong arm powers to defeat a constructive trust on property that a debtor holds which attaches prior to the bankruptcy). The basis for this holding, that "Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own," is questionable. It ignores both the policy of protecting general creditors who might have relied on the debtor's ostensible ownership of the property and the fact that any exercise of strong arm powers acts as a recovery of property that is no longer owned by the debtor. *See* 11 U.S.C. §§ 550, 551; *U.S. Life Title Insurance Co. v. Lester (In re Fieldcrest Homes),* 18 B.R. 678 (Bankr.N.D.Ill.) (rejecting the use of § 544 to avoid constructive trusts.)

Whatever personal knowledge that Eads had of the trust relationship is disregarded pursuant to § 544(a). There is no indication that there were facts providing constructive notice of the trust relationship which would defeat the status of the Eads as hypothetical bona fide purchasers.

The Probascos also make an argument that § 544(a)(1) could not be used to upset their interest in parcel one. This contention seems inapposite. Neither the bankruptcy judge nor the Eads relied on such an argument to support their positions.

■ Finally, the Probascos assert that the bankruptcy court had no authority to sell Bill Probasco's interest in the Jamison agreement. The court found that the agreement was an integral part of the development and use of Quail Meadows and that it had no value other than as a part of the Quail Meadows development. [ER 87]. Next, it found that partition of parcels two and three and the Jamison agreement from parcel one would be impractical and would yield a substantially smaller price than the sale of the whole development. The court found that any detriment to the Probascos from the sale was outweighed by the benefits of the sale. Concluding that the Eads and the Probascos were half owners of the Jamison agreement, the court authorized the sale of the agreement free and clear of the Probascos' interest therein pursuant to 11 U.S.C. § 363(h). [ER 89].

The Probascos argue that the only way the court could find that the Eads had a half interest in the Jamison agreement was through a partnership interest in the agreement. They suggest that this was inconsistent with the Eads' § 544(a)(3) argument and that the court did not have jurisdiction to sell partnership property.

However, 11 U.S.C. § 363(h) specifically authorizes a sale of property, including a co-owner's interest, on the findings that it made. Those findings are not contested. It should make no difference that a partnership or an individual is the co-owner.

The Eads reply that the findings support the conclusion that the Jamison agreement was an appurtenance to Quail Meadows and that it is owned in the same portion as the property. Because the Eads total ownership of Quail Meadows was 87.5%, they contend that at most the court erred by determining that the Probascos held a 50% rather than a 12.5% interest in the agreement.

The findings of the bankruptcy judge are supported by the record and are not clearly erroneous. He draws the correct conclusions of law from the facts.

AFFIRMED.