In re BROWN FAMILY FARMS, INC., Debtor(s).

BROWN FAMILY FARMS, INC., Plaintiff(s),

v.

John W. BROWN, et al., Defendant(s).

Bankruptcy No. 85–0343.
Related Case: 85–01143.

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 1, 1987.

Philip R. Joelson, Toledo, Ohio, trustee.

Raymond Beebe, Van Wert, Ohio, for plaintiff–Brown Family Farm.

Michael Bragg, Toledo, Ohio, for defendant–John Brown.

John J. Hunter, Hunter & Schank, Toledo, Ohio, for Federal Land Bank of Louisville.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Avoid Transfer. The Complaint was filed by Brown Family Farms, Inc. while it was doing business under Chapter 11 of the Bankruptcy Code. Federal Land Bank of Louisville applied for leave to intervene, pursuant to Bankruptcy Rule 7024, as a party in interest. After the Debtor's conversion to a proceeding under Chapter 7, the Trustee continued to prosecute this matter as the successor in interest to the Debtor. At Trial, the parties had the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has also allowed both Pre–Trial and Post–Trial Briefs to be filed on the issues presented. The Court has reviewed the arguments of counsel, the testimony and exhibits, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the Complaint should be Granted.

## FACTS

The Debtor, Brown Family Farms, Inc., hereinafter "BFF", was incorporated in Ohio in March of 1977. BFF was formed by two brothers, Chester Brown and Clair D. Brown. Chester and Clair Brown, with their wives, served as the officers of the corporation. The Defendants, John W. Brown and Frances P. Brown, are the parents of Chester and Clair Brown.

The facts leading up to the filing of this adversary complaint do not appear to be in serious dispute. John W. Brown testified that his son, Clair Brown, offered to sell him sixty (60) acres of farmland for One Hundred and Twenty Thousand Dollars ($120,000.00). John Brown made a counter offer to Clair Brown of One Hundred Thousand Dollars ($100,000.00), which was accepted by BFF. On April 3, 1985, John Brown gave BFF a check for Eighty Thousand Dollars ($80,000.00). On the same day, the check from John Brown was presented to Mid American National Bank & Trust Co. and the proceeds were used to pay off two loans from Mid American Bank, (hereinafter "Mid–Am"). Thirty-six Thousand Eight Hundred and Ninety-six Dollars and Thirty-two Cents ($36,896.32) was used to pay off the first mortgage on the sixty (60) acre parcel of real estate. BFF also paid Mid–Am Forty-three Thousand One Hundred and Three Dollars and Sixty-eight Cents ($43,103.68), as a partial payment of an operating loan. On April 8, 1985, BFF received a release of Mid–Am's first mortgage on the sixty (60) acres.

John Brown testified as to certain actions he took after payment of the Eighty Thousand Dollars. First, he entered into an agreement, apparently a verbal one, that BFF would farm the land in question on a forty-sixty basis. Under the agreement, John Brown was to pay forty percent of the expenses, and receive forty percent of the profits. Secondly, he decided to terminate the tenancy of the occupants of a house located on the property. It was his intention to remove all the buildings from the sixty acres by allowing the local fire department to burn them for practice. However, John Brown testified that he did

not personally notify the tenants that they had to vacate. Instead, he had one of his sons convey the message to the tenants. John Brown stated that he gave the tenants sixty days to vacate, but that they actually took about six months to move out. He further stated that, during the interim, he did not receive any rental payments, and did not know if any were paid to BFF. Lastly, John Brown also testified that he had spoken to some of the neighbors about his purchase of the property.

On June 18, 1985, a general warranty deed for the sixty acres was executed by BFF in favor of John W. Brown and Frances P. Brown. The deed was then given to Clair Brown's daughter, who worked at a law firm that did title work. On July 8, 1985, the tax records of the Lucas County Auditor were changed to reflect a transfer to the Defendants, and the One Hundred Dollar ($100.00) conveyance tax was paid. On or about July 10, 1985, a Four Hundred and Forty-five Dollar ($445.00) check was made out to Jackson Title Agency, Inc. and signed by an officer of BFF. However, the deed was never recorded with the Lucas County Recorder's Office, nor was it delivered to the Defendants, John and Frances Brown.

On July 22, 1985, John Brown transferred to BFF the sum of Twenty Thousand Dollars ($20,000.00). This constituted the balance of the One Hundred Thousand Dollar ($100,000.00) purchase price for the land. Two days later, on July 24, 1985, BFF filed for protection under Chapter 11 of the Bankruptcy Code.

On October 31, 1985, this Court signed an Adequate Protection Order granting the Federal Land Bank a lien on the sixty acre parcel. On November 12, 1985, that Order was filed with the Lucas County Mortgage Records by Federal Land Bank. On December 20, 1985, BFF commenced this adversary proceeding by filing a Complaint to Avoid Transfer. On April 16, 1986, BFF was converted to a proceeding under Chapter 7 of the Bankruptcy Code, and a Trustee was appointed.

After the Trial on the issues presented and subsequent to the filing of Post–Trial memoranda, Federal Land Bank of Louisville filed a Motion to reopen the Trial under Rule 59(a)(2) of the Federal Rules of Civil Procedure. This Motion stated that newly discovered evidence warranted the reopening of the Trial. The Defendants filed a Memorandum in opposition to the reopening of the Trial. Federal Land Bank of Louisville then filed a Motion to Withdraw the Rule 59(a)(2) Motion and to vacate the Hearing which had been scheduled. The Court allowed the Motion to be withdrawn and, consequently, this matter is decisional.

## LAW

The Trustee seeks to avoid the transfer of the sixty acre parcel of real estate from BFF to John W. Brown and Frances P. Brown based on two separate theories. First, the Trustee contends that the transfer is voidable under 11 U.S.C. § 544(a)(3) which gives the Trustee the status of a bona fide purchaser of real property. Second, the Trustee maintains that the transfer was not substantially contemporaneous, and is therefore avoidable under 11 U.S.C. § 547(b) as a preference.

*Voidability of the Transfer Under Section 544(a)(3)*

The Trustee asserts that he may avoid the transfer to John W. Brown under § 544(a)(3), which states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditors, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

According to § 554(a)(3), the Trustee assumes the powers of a hypothetical bona

fide purchaser which has been defined as follows:

A person who

(1) at the instant the petition is filed, purchases from the debtor;

(2) for value;

(3) in good faith;

(4) without actual knowledge of any defect or limitation in title;

(5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;

(6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and

(7) who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

*In re Gurs,* 27 B.R. 163, 165 (Bankr. 9th Cir.1983); *In re Cox,* 68 B.R. 788, 802 (Bankr.D.Or.1987), *In re Eads,* 69 B.R. 730, 733 (9th Cir.B.A.P.1986).

■ Under § 544(a)(3), actual knowledge cannot alter the Trustee's status as a bona fide purchaser of real property. Contrarily, the Trustee is subject to whatever constructive notice is present under state law. *In re Costell,* 75 B.R. 348 (Bankr.N.D.Ohio 1987); *In re Marino,* 813 F.2d 1562 (9th Cir.1987); *In re Ryan,* 70 B.R. 509 (Bankr. D.Mass.1987); *In re Cox,* 68 B.R. 788 (Bankr.D.Or.1987); *In re Heinig,* 64 B.R. 456 (Bankr.S.D.Cal.1986); *In re Perrin's Marine Sales, Inc.,* 63 B.R. 4 (Bankr.W.D. Mich.1985); *In re Fry Bros. Co.,* 52 B.R. 169 (Bankr.S.D.Ohio 1985); *In re Inv. Sales Diversified, Inc.,* 49 B.R. 837 (Bankr. D.Minn.1985); *In re Cirasuolo,* 48 B.R. 447 (Bankr.N.D.N.Y.1985); *In re Dlott,* 43 B.R. 789 (Bankr.D.Mass.1983); *In re Gurs,* 27 B.R. 163 (Bankr. 9th Cir.1983); *In re Richardson,* 23 B.R. 434 (Bankr.D.Utah 1982); *In re Jones,* 20 B.R. 988 (Bankr.E.D.Penn. 1982); *Matter of Elin,* 20 B.R. 1012 (D.N.J. 1982); *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982); *Matter of Lewis,* 19 B.R. 548 (Bankr.D.Idaho 1982); *Gilbert v. Dixon,* 18 B.R. 579 (Bankr.S.D.Ohio 1982).

Therefore, while the provisions of § 544(a)(3) state that the Trustee takes the powers of a bona fide purchaser of real property "without regard to any knowledge of the Trustee or any creditor", § 544(a)(3) does not override provisions of state law which impute notice of claims to real estate through constructive notice, or through facts which are legally sufficient to put a purchaser upon inquiry. *In re Gurs, supra* 27 B.R. at 165; *In re Costell, supra* 75 B.R. at 352; *In re Ryan, supra* 71 B.R. at 515; *In re Inv. Sales Diversified, Inc., supra* 49 B.R. at 844; *Matter of Elin, supra* 20 B.R. at 1020.

■ In the present case, the Defendants contend that the Trustee cannot take the powers of a bona fide purchaser for two reasons. First, Defendants' counsel asserts that the Trustee had constructive notice of the transfer from the transfer card filed with the Lucas County Auditor, and from John Brown's acts of possession. Second, counsel argues that the Trustee, as a purchaser, could not record any deed transferred from BFF because of the presence of the transfer card which lists John and Frances Brown as the owners of the property. Neither argument is sufficient to defeat the Trustee's avoidance powers.

In Ohio, constructive notice can be imputed when the transferee is in "open and observable possession" of real estate. *Butcher v. Kagey Lumber Co.,* 164 Ohio St. 85, 90, 128 N.E.2d 54 (1955); *Williams v. Sprigg,* 6 Ohio St. 585, 594–597 (1856); *Ranney v. Hardy–Zeller v. Bading,* 43 Ohio St. 157, 159–160 (1885); 72 O.Jr.3d *Notice and Notices* § 22. A review of the testimony reflects that John W. Brown did not maintain open and observable possession of the property. Before the payment of the Eighty Thousand Dollars, John Brown testified that he often helped his sons with the farming done on the sixty acres. After the payment, John Brown continued to do the same types of things, assisting his sons in the fields. *Brown transcript* at 23–33. Moreover, as of the date of the Trial, the buildings that John had wanted to remove through controlled burning were still standing, unburned.

Even the tenant remained the same, remaining in possession until some time after the filing of the Bankruptcy petition.

In several older decisions, the Ohio Supreme Court has addressed the question of possession acting as constructive notice. In *Ranney, supra* 43 Ohio St. at 160, the Supreme Court states, "if the possession is not exclusive, or is not of a character to fairly give information that the occupant is asserting dominion over the property under some claim of right or authority, it will not operate as notice." Earlier, in *Williams v. Sprigg, supra* 6 Ohio St. at 595, the Supreme Court noted, "There must be something in the acts which accompany possession of property, in order to give constructive notice, which can be seen and understood—something that will induce inquiry —that will naturally raise the question as to who may have rights there." Accordingly, under Ohio law, the acts of possession which John Brown undertook were insufficient to impute constructive notice to the Trustee. His observable actions were minimal, and were, in fact, almost identical before and after the payment to his sons. They cannot be considered to be of a character which would induce inquiry.

The transfer card is also insufficient to provide notice to the Trustee of the Defendant's interest in the property. The recording of a deed operates as notice to all subsequent purchasers, or lienors, of its existence and contents. The policy behind the recording statute is to provide the best and most easily accessible evidence of the status of title. *Pinney v. Bank*, 71 Ohio St. 173, 182, 72 N.E. 884 (1904). The transfer cards in the office of the Auditor cannot act as a shadow recording system. Such a holding would be in derogation of the recording statutes. Purchasers are entitled to rely on the official records. This is the "trade-off" for a purchaser being chargeable with notice of the recitals and disclosures contained in instruments in the chain of title. There is no statutory requirement for a purchaser to check the records of the County Auditor, and this Court will not create one.

In addition, counsel for the Defendants advances a somewhat different argument based on the filing of the transfer card. Counsel asserts that the presence of the transfer card would prevent the Trustee from recording. Attention was directed to Ohio Revised Code § 317.22, which states that no deed may be recorded until approval from the Auditor's office has been obtained. Defendant's counsel argues that if the Trustee cannot record because the transfer card is in the name of John and Francis Brown, then the Defendants are not ones "against whom applicable law permits such transfer to be perfected". *See* § 544(a)(3).

Defendants counsel's argument must fail for two related reasons. The first is based on the order of the hypothetical conveyance from the Debtor which occurs upon the filing of the petition. Under *Gurs*, the hypothetical purchase of the property precedes the attempt to record. It is only after the "purchase" of all the Debtors' interests in the property that the Trustee takes "all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance". *In re Gurs*, 27 B.R. 163, 165 (9th Cir.B.A.P.1983). Accordingly, if there is no imputed notice from recordation, possession, or any other source recognized under state law, the Trustee can take as a bona fide purchaser, and any notice the Trustee might theoretically receive in later attempting to record would not change the Trustee's original status as a bona fide purchaser. Under Ohio law, specifically Ohio Revised Code § 5301.25(A), until the recording of a deed, a conveyance is fraudulent as to a subsequent bona fide purchaser having, at the time of the purchase, no knowledge of the existence of such former deed. Therefore, the Trustee, as a subsequent bona fide purchaser without notice, would be able to defeat the interest of the Defendants even without recording, and any notice the Trustee might receive through attempting to record would be too late to alter the Trustee's bona fide purchaser status.

The second reason the Defendants' argument is unpersuasive is that the transfer

card would not prevent the Trustee from recording. Recording could be delayed, but the bona fide purchaser would be able to perfect the conveyance after appropriate state court (or Bankruptcy Court) proceedings. The delay caused by a lawsuit does not mean that the transfer "cannot be perfected". This holding is also in accord with the *Gurs* definition of the Trustee's powers. After the "purchase" the Trustee "takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance". "All unilateral steps" would appear to encompass a lawsuit against the Defendants.

*Recovery of the Property Under Section 547(b)*

■ Section 547(b) states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Defendants stipulated to all the elements of an avoidable § 547(b) preference except § 547(b)(5). At the trial, the Court took Judicial Notice of the record in this case. The bank account contained, at the time of the Trial, Seven Hundred Fourteen Dollars and Six Cents ($714.06). The origi-

nal Chapter 11 Schedules listed Debts of approximately One Million One Hundred Thousand Dollars ($1,100,000.00). Defendants did not rebut the information contained in the Record, and the Court finds that the Defendants, in receiving land worth approximately One Hundred Thousand Dollars ($100,000.00) for a One Hundred Thousand Dollar debt, received more than they would have under a Chapter 7 liquidation. Thus, the sale of the property is a preferential transfer under § 547(b).

*Defendant's Defense Under § 547(c)(4): Transfer Followed by New Value*

■ The Defendants, John and Frances Brown, argue in the alternative that the payment of Twenty Thousand Dollars ($20,000.0) to BFF was "new value" given after an otherwise avoidable preferential transfer. "New value" given after a transfer may not be avoided under 11 U.S.C. § 547(c)(4), which states:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

The Trustee has not addressed this issue, other than to argue that the deed was never delivered, and delivery is necessary under Ohio law. This argument does not appear to be the central problem with the Defendants' position.

The term "transfer" is included in the general definition section at 11 U.S.C. § 101(50):

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

The general definition is very broad and would appear to cover the sale to the Defendants, if the Court were to find that delivery had occurred. However, Section 547 has a more specific definition of the term "transfer" as it is used in that section. 11 U.S.C. § 547(e)(2) states:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

Thus, the transfer never having been perfected, the definition in § 547(e)(2)(C)(i) sets the time of the transfer, and that time was the commencement of the bankruptcy case. The Bankruptcy case was filed on July 24, 1985, while the Twenty Thousand Dollars ($20,000.00) was paid two (2) days earlier, on July 22, 1985. Accordingly, the payment of the Twenty Thousand Dollars ($20,000.00) did not occur after the preferential transfer, and is not protected by § 547(c)(4).

*Defendants' "Contemporaneous Exchange" Defense under § 547(c)(1)*

■ The Defendants assert that the sale of the farmland by BFF to John and Frances Brown was intended as a substantially contemporaneous exchange, and is therefore not voidable under § 547(c)(1).

11 U.S.C. 547(c)(1) states in pertinent part:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

There is little legislative history to Section 547(c)(1) other than the following:

The exception is a simple one, excepting a transfer that is really not on account of an antecedent debt ... No doubt a purchase by the debtor of goods or services with a check, if deemed to be on credit by state law, would be insulated by this exception. Though strictly speaking the transaction may be a credit transaction because the seller does not receive payment until the check is cleared through the debtor's bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact substantially contemporaneous. H.R.REP. No. 595, 95th Cong., 1st Sess. 373 (1977); S.REP. No. 989, 95th Cong., 2d. Sess. 88 (1978), *U.S.Cod Cong. & Admin.News* 1978, p. 5787.

Based on this legislative history, some courts have held that the "contemporaneous exchange" exception is limited to cases involving purchases paid for by checks which are not presented for payment until a point within the preference period. *See In re Olson,* 66 B.R. 687, 694 (Bankr.D. Minn.1986). This Court will not limit § 547(c)(1) to only a transaction paid for by check. Instead, the Court will look to the decision of the Sixth Circuit Court of Appeals in *In re Arnett,* 731 F.2d 358 (6th Cir.1984), where the Court stated: "it is clear that the classic exception to avoidance intended by Congress to be reflected in section 547(c)(1) is the exchange of goods or other 'value' for a check." *In re Arnett, supra* at 361. In holding that transactions involving checks are the "classic exception", the Court implies that other transactions, of a less classic nature, are also covered under § 547(c)(1). *See also, In re Salem Mortg. Co.,* 791 F.2d 456 (6th Cir.1986). It also may be reasonably inferred that the "time limit" on "substan-

tially contemporaneous" should be similar to the time frame in a normal check transaction. This interpretation would appear to be consistent with the result in *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), if that decision survived the passage of the Bankruptcy Reform Act of 1978, and became part of section 547(c)(1).

In the case at bar, the first payment, for Eighty Thousand Dollars ($80,000.00), was made on April 3, 1985. The second payment, for Twenty Thousand Dollars ($20,-000.00), was made on July 22, 1985. The general warranty deed was executed on June 18, 1985, but was never recorded. Accordingly, even if the Court were to assume *arguendo* that the parties intended the sale to be a "contemporaneous exchange", and the dates of April 3d to June 18th are used as the relevant dates for purposes of the "exchange", the Defendants' defense still must fail. (Of course, it should be noted that under § 547(e)(2)(C)(i) the actual time of the "transfer" would be July 24, 1985 the date the petition was filed.)

A review of the case law appears to indicate that a gap of even two and a half months is too long a period for a "contemporaneous exchange". Nevertheless, the Defendants cite several cases in support of their position that the exception in § 547(c)(1) prevents the transaction from being an avoidable preference.

The Defendants cite *In re Gulino*, 779 F.2d 546 (9th Cir.1985) for the proposition that "the transfer of property between family members occurred when the purchaser actually took possession of the property some seventeen (17) months prior to the execution and recording of the deed." *Defendants' Post–Trial Brief* at page 5. The *Gulino* case is clearly distinguishable from the present case. In *Gulino* the purchaser took "open, notorious, exclusive and visible" possession of a house by setting up residence there. *In re Gulino, supra* at 550. Having found constructive possession, the Ninth Circuit went on to find that the transfer occurred upon the purchaser taking possession, *not* seventeen months later when the deed was recorded. How-

ever, in the instant case, the Court has already found that the Defendants did not fulfill the requirements for constructive possession under Ohio law. Thus, even under *Gulino*, which is not binding on this Court, the transfer would not be a "contemporaneous exchange."

The Defendants also cite two Bankruptcy Court cases, *In re Burnette*, 14 B.R. 795 (Bankr.E.D.Tenn.1981) and *In re Martella*, 22 B.R. 649 (Bankr.D.Colo.1982). The cases are not persuasive. Both cases deal with the enabling loan exception, § 547(c)(3). The cases hold that the "contemporaneous exchange" exception of § 547(c)(1) is applicable to situations where a security interest is not perfected within the ten (10) day limitation set forth in § 547(c)(3)(B). The Sixth Circuit Court of Appeals rejected this position in *Arnett, supra*. The Court specifically declined to follow the *Burnette* decision, concluding that Congress did not intend to give creditors "two bites at the apple". *In re Arnett, supra* 731 F.2d at 362. Moreover, neither decision involved a time period as long as the one in this case. In *Burnette*, the security interest was perfected in less than twenty (20) days. In *Martella*, the security interest was properly perfected in approximately six (6) weeks.

With the exception of *In re Martella*, it does not appear that any other published decision has found a transfer of property involving a time period of greater than one month to be "substantially contemporaneous". *See* Annotation, *What Falls Within "Contemporaneous Exchange" Exception to Bankruptcy Trustee's Power to Avoid Transfer of Property by Debtor, Under § 547(c)(1) of Bankruptcy Code (11 USCS § 547(c)(1))*, 77 A.L.R.Fed. 14, 37–52. Therefore, it appears that even when the facts are viewed in the light most favorable to the Defendants' position, the gap between the Eighty Thousand Dollar ($80,-000.00) payment and the transfer of property is too long to be considered substantially contemporaneous. Consequently, the Defendants' defense based on § 547(c)(1) cannot be sustained.

All the elements of the preference having been satisfied, and the exceptions being inapplicable to the present case, the Court must find that the sale of the property was an avoidable preference.

*Transferee Liability for Avoided Transfer: "Offsets" Under § 550(d)*

There are certain offsets allowed to a good faith purchaser who has had a transfer avoided under § 544 or § 547. Section § 550 states in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; ...

\* \* \* \* \* \*

(d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

■ The Defendants argue that several payments were made which give rise to liens in favor of John and Frances Brown under § 550(d). First, the Defendants argue that they are entitled to a lien for all taxes paid on the property under § 550(d). This section is only available to "good faith transferees". *In re Strom*, 46 B.R. 144, 150 (Bankr.E.D.N.C.). There has been no allegation by the Trustee that the Defendants did not purchase the property in good faith, and the Court specifically finds that they are "good faith transferees". Thus, under the definition in § 550(d)(2)(C), the payment of property taxes is an "improvement" and gives rise to a lien in favor of the Defendants.

■ The Defendants also seek a lien for the payment of the first mortgage. The evidence introduced at trial showed that Mid American National Bank and Trust's first mortgage on the subject property was paid off from the proceeds of the sale on the same day the sale took place. Based on the evidence presented, the Court finds that the payment of the first mortgage was part and parcel of the sale, and though not made directly by the Defendants, nevertheless in this case qualifies as an "improvement" under § 550(d)(2)(D). Accordingly, the Defendants are entitled to a lien for the increase in the value of the property through the payment of Thirty-six Thousand Eight Hundred and Ninety-six Dollars and Thirty-two Cents ($36,896.32) in satisfaction of a lien which was superior to the rights of the Trustee. Further, equity demands that this clear-cut benefit to the Trustee be recoverable by the Defendant.

■ Finally, Forty-three Thousand Dollars ($43,000.00) of the purchase price was paid to Mid–Am to reduce the amount of the operating line debt which was secured by the Debtor's crops. This is not the type of payment which is recoverable under § 550(d). An "improvement" only includes "payment of any debt secured by a lien *on such property* that is superior or equal to the rights of the trustee ..." In the present case, the Defendants did not purchase the crops which secured the operating loan. Therefore, under the definition in § 550(d)(2)(D), the reduction of an unrelated secured debt is not an "improvement" to the property. It may be of gener-

al benefit to the estate, but it did not operate to reduce the secured debt on the property recovered. Moreover, the payment was made to Mid-American Bank to secure new credit. *Brown transcript* at 51. In short, it is difficult to even find a general benefit to the estate when the money was paid to a secured creditor in order to obtain more secured debt. Accordingly, no lien can attach for the recovery of the funds used to satisfy the operating loan.

### Conclusion

As discussed in the body of the Opinion, the unrecorded transfer of real property is avoidable based on the Trustee's status as a good faith purchaser under § 544(a)(3). The trustee cannot be charged with constructive notice because the Defendants' acts of possession were not "open and observable". The transfer is also an avoidable preference, the time period between the payment of the money and the transfer of the property being too long for it to be considered "substantially contemporaneous". The Defendants are entitled to an "offset" for "improvements" made on the property. Those "improvements" were the payment of property taxes, and the satisfaction of the first mortgage.

Finally, "[t]he result in this case may appear somewhat harsh. However creditors of the debtor did not have record notice of any interest of the [Defendants] in the property at issue and may have relied upon a belief the debtor had equity in the property." *In re Brown Iron & Metal, Inc.*, 28 B.R. 426, 431 (Bankr.E.D.Tenn. 1983). The recording statute is a stern taskmaster, but the legislature has found the benefits of reliable records to be worth the occasionally harsh results. This Court must follow and uphold the statute.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the transfer of the sixty (60) acre parcel from Brown Family Farms, Inc. to John W. Brown and Frances P. Brown be, and is hereby, AVOIDED.

It is FURTHER ORDERED that John W. Brown and Frances P. Brown relinquish the sixty (60) acre parcel to the Trustee of the estate of Brown Family Farms, Inc.

It is FURTHER ORDERED that John W. Brown and Frances P. Brown are Granted a lien for the amount expended on property taxes for the above property.

It is FURTHER ORDERED that John W. Brown and Frances P. Brown are Granted a lien for Thirty-six Thousand Eight Hundred and Ninety-six Dollars and Thirty-two Cents ($36,896.32), the amount of the first mortgage which was satisfied.

It is FURTHER ORDERED that if the parties cannot agree on the amount actually expended for property taxes within twenty-one (21) days from the date of this Order, the Court shall determine the total at a Hearing which may be requested by any party.